IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JAMES EDWARD ALLEN | * | |
| Plaintiff, | * | |
| v. | * | CIVIL ACTION NO. JKB-16-685 |
| C.O. J. STURGIS | * | |
| SGT. BROMLEY | | |
| LT. DAUGHERTY | * | |
| WARDEN K. GREEN | | |
| COMMISSIONER WAYNE WEBB | * | |
| C.O. MISTER[1] | | |
| C.O. COLLINS | * | |
| SGT. HOLMES | | |
| | * | |
| Defendants. | | |
| | ***** | |

## MEMORANDUM

Pending before the court is an unopposed motion to dismiss or, in the alternative, motion for summary judgment filed by defendants.[2] ECF No. 26. Upon review of the pleadings filed, the court finds a hearing in this matter unnecessary. *See* Local Rule 105.6 (D. Md. 2016). For the reasons stated below, defendants' dispositive motion will be GRANTED.

### I. Complaint Allegations

James Edward Allen, a former inmate, filed this civil rights complaint alleging that during the 8-4 shift on January 21, 2016, while housed at the Eastern Correctional Institution

---

[1] The Clerk shall modify the docket to substitute the name of C.O. Mister for that of C.O. Miser.

[2] Pursuant to the dictates of *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), on April 19, 2018, the Clerk of Court informed Allen that defendants had filed a dispositive motion; that he had seventeen days in which to file a written opposition to the motion; and that if Allen failed to respond, the claims against defendants could be dismissed without further notice. ECF No. 28. Allen has not filed an opposition.

(ECI), Correctional Officer Mister demanded a search of Allen's disciplinary segregation cell. Allen claims this occurred because Allen was found not guilty in a prior administrative hearing presumably triggered by Mister's writing a rule infraction. Allen states that, per protocol, he was handcuffed at the hands and feet and removed from his cell. He contends that he exchanged words with Correctional Officer Sturgis and Sturgis slammed Allen's head into the concrete several times. Allen alleges that Sturgis later slammed his head again, possibly causing his shoulder to break or his rotator cuff to tear. He further asserts that Correctional Officers Sturgis and Collins took turns kneeing him in that back and then, with the help of Lieutenants Bromley and Daugherty, as well as Correctional Officer Mister, beat him, cut off his clothes, put a bag over his head and placed him in a cell, naked, for several days. Allen alleges that his face was bleeding and swollen with a gash over his nose and he had a bleeding toe, broken or sprained shoulder, and cuts and bruises all over his body from head to feet. He claims that he was placed in a cell with a broken window during the first snow storm in January of 2016 and was not given food, toiletries, or needed medical attention.[3] ECF No. 1, pp. 5-6. Allen claims he was assigned to the cell for one week, and was only give a snack and toilet paper "after many hours, more than a day . . . ." He appears to claim that he sent a note to his family, who complained to Warden Green and Sergeant Holmes, but no changes were made or investigation conducted. Allen seeks punitive damages to be determined (TBD), but sets out the amount of $50,000.00 in damages. *Id.*, p. 8.

---

[3] Allen contends that he was denied medical attention because Bromley indicated that Allen was a threat to staff. ECF No. 1, pp. 6-7.

## II. Defendants' Response

Mister states under oath that on January 21, 2016, while escorting an ECI inmate back to his cell, he noticed a "fishing line" being pulled from cell 4-B-14 to cell 4-B-20. Mister removed the note or "kite" from the line and Allen, who was housed in cell 4-B-14 asked Mister "why did you take my kite; I don't have problems with you." ECF No. 26-4, Mister Decl.[4] Mister affirms that he opened the note, which read:

> "Haw Cuzz Dis what I wanted to holla achu about I know ya come off real soon I got blades 4 sell, I usually sell 'em $15 unsharpen $20 sharpen but I'll sell ya one already made up for 25 flagz cuzz dis deal is for you no one else keep between us."

ECF No. 26-4, Mister Decl., ¶ 4.

Mister affirms that he wrote a ticket against Allen for Rule #406 and #105 violations, which entail the possession of or passing contraband. Mister maintains that at no time has he or any other officer in his presence retaliated against Allen. *Id.*, ¶ 5 & ECF No. 26-5. Allen was found guilty of both rule violations and sentenced to a cumulative 90-day segregation period and received an indefinite suspension of his visitation privileges. ECF No. 26-5.

On January 22, 2016, Allen received another infraction from Sturgis for violating Rules #104, #105, and #400. The infraction was based upon the following incident. On January 21, 2016, Allen was being escorted back to his cell following a cell search by Sturgis and Collins. According to the infraction notice, Allen became verbally abusive and attempted to pull away from the correctional officers. ECF No. 26-6, ECF No. 26-11, Sturgis Decl., ECF No. 26-12, Collins Decl., ECF No. 26-13, Daugherty Decl. Allen was guided to the ground and, after leg irons were applied, he was assisted to his feet and placed in cell 4-B-1, where he again resisted

---

[4] All citations to exhibits refer to the electronic pagination.

staff and once more had to be guided to the floor. He was placed on Staff Alert Level I status. ECF No. 26-6 & ECF No. 26-20. Allen's clothing had to be cut off due to his non-compliance with orders and he stated: "I get out in six months and I'm gonna come kill all you Mother Fucker[s]!" The infraction noted that two fingernail clippers were found in Allen's right sock during the search. Staff left the cell without further incident and Allen was informed he would be receiving an infraction. Allen was found guilty of Rule #104 and #400 violations and received 90 days' segregation.[5] ECF No. 26-6.

The use-of-force investigation report reveals that after the incident, Allen complained of left shoulder pain, and medical staff was contacted and responded to the unit. Nurse Fenoch reported that Allen was awake, alert, and oriented, able to rotate his left shoulder and fingers, and denied numbness or tingling. ECF No. 26-7; *see also* ECF No. 26-9, Whitelock Decl. and ECF No. 26-17, Enoch Decl. Allen was prescribed a five-day regimen of Motrin and was seen again on January 30, 2016, for complaints of facial and shoulder discomfort. Enoch noted "healed areas noted to bridge of nose" and that Allen was able to close and open his mouth. Allen was seen the following months for complaints of left shoulder, lower back, and jaw pain. X-rays were ordered, but Allen was transferred out of ECI before the radiology tests were done. ECF No. 26-18.

Photographs taken at the time of the incident indicate that a mesh bag (a spit mask) was placed on Allen's head. ECF No. 26-7. Digital Video Discs (DVD) provided show Allen being escorted by correctional officers, attempting to pull away from the escort, being taken to the ground, becoming verbally abusive, having a spit mask placed on his head as a precaution, and

---

[5] In addition, Correctional Officers Lee and Tyndall, as well as Sergeant Bromley provide affirmations of the events involving the escort. ECF No. 26-14, Lee Decl., ECF No. 26-15, Bromley Decl. & ECF No. 26-16, Tyndall Decl.

complaining of shoulder pain and the need to stretch his shoulder. The DVD further reveals a prison nurse arriving to evaluate Allen's left shoulder discomfort, a correctional officer explaining the procedures and protocols involving Staff Alert Level I status to Allen, Allen's clothing being cut off and his being secured in the cell. ECF No. 26-8. In another DVD, captioned as the "cell search escort," Allen is shown being escorted on the B Unit. ECF No. 26-22.

The Use of Force incidents were investigated by the Internal Investigative Division (IID) of the Department of Public Safety and Correctional Services. ECF No. 26-21 & ECF No. 26-22. No evidence was found to support the claims of officer misconduct.

### III. Standard for Summary Judgment

Because defendants have filed and relied on declarations and exhibits attached to their dispositive motion, their motion shall be treated as a summary judgment motion. Summary judgment is governed by Federal Rule of Civil Procedure 56(a), which provides in part:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts

5

showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting former Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). Because plaintiff is self-represented, his submissions are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But, the court must also abide by the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993), and citing *Celotex Corporation v. Catrett*, 477 U.S. 317, 323–24 (1986)).

In *Anderson*, the Supreme Court explained that in considering a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id.* at 252.

The moving party bears the burden of showing that there is no genuine issue as to any material fact. No genuine issue of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof. *See Catrett*, 477 U.S. at 322-23. Therefore, on those issues on which the

nonmoving party has the burden of proof, it is his or her responsibility to confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue for trial.

### IV. Analysis

**Respondeat Superior**

In order for liability to exist under 42 U.S.C. § 1983, the defendant must be personally involved in the alleged violation. *See Shaw v. Stroud,* 13 F.3d 791, 799 (4th Cir. 1994). Under *Shaw*, supervisory liability may attach under § 1983 if a plaintiff can establish three elements: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff, (2) the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices," and (3) an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *Id.* (citations omitted).

No allegation demonstrates the supervisory liability of former ECI Warden Green or Commissioner Wayne Webb with regard to the Eighth Amendment claims at issue here. *See Shaw*, 13 F.3d at 799. There is no evidence that these administrators had actual or constructive knowledge of alleged excessive force problems associated with the named correctional officers or with Allen's conditions of confinement while on Staff Alert Level status. The liability of supervisory officials "is not based on ordinary principles of respondeat superior, but rather is premised on a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those

7

committed to their care." *Bayard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (citing *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)). Allen's claim with regard to the Warden and Commissioner is based on their supervisory positions. They do not appear to have been personally involved in the issues presented here or to have had actual or constructive knowledge thereof. Accordingly, Warden Green and Commissioner Webb are entitled to summary judgment as a matter of law.

**Conditions of Confinement**

Presumably, Allen raises a conditions-of-confinement claim involving the conditions of the segregation cell he was placed into while on Staff Alert Level status.

A prisoner may set out a conditions-of-confinement claim by alleging that he was deprived of a basic human need that was objectively sufficiently serious and that, subjectively, prison officials acted with a sufficiently culpable state of mind to expose him to those conditions. *Strickler v. Waters*, 989 F.2d 1375, 1379 (4th Cir. 1993). Only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992). Such deprivations may be demonstrated by producing evidence of a serious or significant physical injury resulting from the challenged conditions, *Strickler*, 989 F.2d at 1380-81; *Rish v. Johnson*, 131 F.3d 1092, 1096 (4th Cir. 1997), or by demonstrating a substantial risk of serious harm resulting from the unwilling exposure to the challenged conditions. *Helling v. McKinney*, 509 U.S. 25, 33-35 (1993). The key in determining whether prison conditions become cruel and unusual is to examine the effect on the prisoner. *Rhodes v. Chapman*, 452 U.S. 337, 364 (1981). Allegations that prison conditions "involve the wanton and unnecessary infliction of pain," or are "grossly disproportionate to the severity of the

crime," or are "without any penological purpose" fall squarely within the ambit of the Eighth Amendment. *Id*. at 347. The Eighth Amendment requires a court to examine whether prison conditions impose cruel and unusual punishment.

The record shows that Allen was placed on Staff Alert Level I on January 21, 2016, and remained so assigned for four days. His status level was changed to Staff Alert Level II on January 24, 2016 and to Staff Alert Level III on January 28, 2016. He was removed from Staff Alert Level status on January 29, 2016. ECF No. 26-10. Allen fails to present any medical evidence or declaration showing that he suffered a real and actual injury from being subjected to the conditions for the eight days he was housed on Staff Alert Level status.

**Use of Excessive Force**

Whether force used by prison officials was excessive is determined by inquiring if "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6-7. This court must look at the need for application of force; the relationship between that need and the amount of force applied; the extent of the injury inflicted; the extent of the threat to the safety of staff and inmates as reasonably perceived by prison officials; and any efforts made to temper the severity of the response. *Whitley v. Albers*, 475 U.S. 312, 321 (1986). The absence of significant injury alone is not dispositive of a claim of excessive force. *Wilkens v. Gaddy*, 599 U.S. 34 (2010). The extent of injury incurred is one factor indicative of whether or not the force used was necessary in a particular situation, but if force is applied maliciously and sadistically, liability is not avoided simply because the prisoner had the good fortune to escape serious harm. *Id*. at 38.

9

Based upon the unopposed records and exhibits, the applications of force here were necessitated by Allen's sudden and belligerent conduct in pulling away from the escort officers. There is no dispute that correctional officers took Allen to the floor. There is no evidence that Allen was slammed into concrete or that he sustained the injuries he complained of. It is clear that some force was necessary to keep control of Allen during his escort.

The use of force was documented by DVD footage, which showed that the amount of force applied to control Allen was the minimum amount necessary to attain his compliance and his injuries were minor. Defendants used compliance handholds. No punching, pushing, or kicking occurred. No weapons or other objects were employed. Faced with Allen's non-compliant conduct during the escort, and his subsequent abusive verbal comments, the officers used the amount of force necessary to protect the staff and restore order. It remains uncontroverted that Allen's documented injuries were minimal and do not support his claim that he was slammed into the concrete; rather, they support the correctional officer's version of their use of force. Additionally, it is evident that the correctional officers endeavored to moderate the force used in keeping Allen under a controlled escort by using handholds against him rather than using weapons or chemical agents. Lastly, Allen has put forth no evidence or shown that he would be able to assemble any evidence that the named correctional officers applied force maliciously or sadistically.

Allen, the non-moving party, must establish the existence of a genuine issue of material fact by presenting evidence on which a fact-finder could reasonably find in his favor. Allen has failed to submit any evidence to support his claim, or to put the material fact of this case—the use of force against Allen—in dispute. Although the non-moving party may rely upon a verified

complaint when allegations therein are based on personal knowledge, *see Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991), Allen's complaint is not verified.[6] Defendants are entitled to summary judgment. A separate Order follows.

Dated this 9th day of May, 2018.

BY THE COURT:

/s/
James K. Bredar
Chief Judge

---

[6] Allen's complaint does contain a "certification and closing" section. ECF No. 1, p. 15. Even when affording the provision a generous construction, the Court finds that it does not contain language that verifies the truthfulness of Allen's statement of facts.